# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:17-CV-438-JEM |
| $59,980 IN U.S. CURRENCY,<br>    Defendant, | )<br>)<br>) |
| and | )<br>) |
| HERBERT WONG,<br>    Claimant. | )<br>) |

**OPINION AND ORDER FOR ENTRY OF FORFEITURE JUDGMENT**

This is an action for Forfeiture In Rem. The Government alleges that the defendant currency constitutes money furnished or intended to be furnished in exchange for a controlled substance. Claimant Wong, who is proceeding *pro se*, is the only claimant in this action. By agreement of the parties, this matter came before the Court for a bench trial on January 29, 2020. The Government appeared by Assistant United States Attorneys Orest S. Szewciw and Kathleen T. Trzyna. Claimant Wong did not appear, and did not file any motions explaining his absence or requesting a continuance, although the Court notes that he did contact the Office of the Clerk at the end of the business day on January 28, 2020, to inform the Clerk of Court that he would not be able to attend.

After hearing all of the evidence, taking into account the credibility of the witnesses, and considering the parties' pleadings and the exhibits admitted into evidence, the Court hereby makes its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) and orders entry of forfeiture judgment.

**I. Background**

On November 24, 2017, a Verified Complaint In Rem was filed against the defendant currency on behalf of the United States of America. The Complaint alleges that the defendant currency constitutes things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, thereby subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), and seeks to have the defendant currency forfeited and condemned to the United States of America. On December 29, 2017, Claimant Wong filed a Motion to Dismiss and Motion for Summary Judgment, denied on May 2, 2018.

On July 12, 2019, the Court held a status conference, at which Claimant Wong appeared by telephone, and set this matter for a bench trial for January 29, 2020, and a final pretrial conference for December 19, 2019. Claimant Wong failed to participate in the telephonic final pretrial conference, without explanation, so the Court set the matter for a show cause hearing and renewed final pretrial conference for January 9, 2020. Claimant Wong appeared by telephone at the conference and the Court concluded that cause was shown for his earlier failure to appear. At the final pretrial conference, the Court confirmed the bench trial for January 29, 2020, and Claimant agreed that he would be able to appear in person at the trial.

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345, 1355. The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. 636(c).

**II.     Analysis**

The Government must "establish, by a preponderance of the evidence, that the property is subject to forfeiture" and, "if the Government's theory of forfeiture is that the property was used to

commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(1), (3).

The Government brings this forfeiture case pursuant to Title 21 of the United States Code, Section 881, which provides:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them: . . . All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter

21 U.S.C. § 881(a)(6). Accordingly, in this case the Government must establish by a preponderance of the evidence that the defendant currency was furnished or intended to be furnished in exchange for controlled substances in violation of 21 U.S.C. § 841.

The Government presented evidence that on May 1, 2017, Trooper Nicholas Meade received a call about a suspicious package at a FedEx facility in South Bend, Indiana. When he arrived at the facility, he was informed that an employee smelled an odor of marijuana coming from a package or the man mailing it. Meade testified that the package in question was taped completely shut at every edge and corner, a technique he explained is often used by people mailing illicit substances to keep odor from being detectable. He testified that he placed the package on the floor with several other similarly-sized packages and then conducted a K-9 sniff search with his dog, Jake, who was trained in detection of illicit substances but not to alert for currency. Meade testified that Jake alerted on the suspicious package, and that Meade then telephoned the sender identified on the package, a Mr. Leon Miller. Meade testified that, after he had identified himself and told Miller that his dog had alerted on the package, Miller seemed nervous and told him that the package contained a board game

3

called "Stow and Go" that he was mailing to a friend in California. Meade told Miller that he was going to apply for a search warrant and that if the package contained what Miller claimed, it would be sent to California. Meade then obtained the signed order for the search warrant and opened the package, which, at about seven to eight pounds, seemed to him to be heavier than a typical board game. Upon opening the package, he found a smaller gift-wrapped box. Upon unwrapping it, the box was labeled "Stow and Go," and pictured, not a board game, but a mat-like item used to roll up partially completed puzzles for transport. Meade testified that he then opened that box and found four vacuum-sealed packages containing U.S. currency. He then transported the evidence to the Indiana State Police Toll Road post and contacted Task Force Officer John DuPont to start an investigation between the Indiana State Police and the Drug Enforcement Agency. Officer DuPont also testified at the trial. Both officers testified that the vacuum sealed currency was hidden in a filing cabinet and that when Jake was brought into the room, he again alerted on the package. The officers testified that they began to remove the cash from the packaging, and upon realizing the amount of currency, contacted an evidence technician to assist in counting the currency and placing it into evidence storage. The officers ran the bills, in denominations of $5, $10, $20, $50, and $100, through the bill counter three times for accuracy, and the total was $59,980. The currency was then placed into evidence storage.

No evidence of any legitimate use of the currency was put forth.

Taken as a whole, the Court concludes that, although the evidence is circumstantial, the Government has established by preponderance of the evidence that the defendant currency was furnished or intended to be furnished in exchange for controlled substances. *See, e.g.*, *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 459 (7th Cir.

2005) ("a properly trained dog's alert to currency should be entitled to probative weight"); *United States v. $47,000 in United States Currency*, No. 19-CV-00551-JPG-RJD, 2019 WL 4861020, at *3 (S.D. Ill. Oct. 2, 2019) (finding that odor, as well as "the way the seized cash was packaged . . . may support an inference that it was related to narcotics trafficking"); *United States v. $42,600.00 United States Currency*, 409 F. Supp. 3d 671, 676 (S.D. Ind. 2019) ("The Seventh Circuit has recognized both a positive alert from a narcotic detection canine and a suspicious explanation about the source of funds as probative evidence of a connection between currency and drug trafficking.") (citing $30,670.00, 403 F.3d at 647); *U.S. v.$20,000.00 in U.S. Currency*, No. 2:14-CV-357-PRC, 2014 WL 6669676, at *3 (N.D. Ind. Nov. 24, 2014) (denying a motion to dismiss because the combined weight of "the canine alert, the allegations of the quantity of the seized currency ($20,000.00), the manner in which the currency was bundled, [claimant]'s nervous appearance when confronted by law enforcement, and the inconsistent statements given by [claimant] . . . are sufficient to support a reasonable belief that the Government will be able to prove by a preponderance of the evidence at trial that the seized $20,000.00 is subject to forfeiture"); *United States v. Funds in the Amount of Forty-Five Thousand Fifty Dollars ($45,050.00)*, No. 06 C 6948, 2007 WL 2323307, at *4 (N.D. Ill. Aug. 9, 2007) (noting that "dog sniff evidence is entitled to significant weight in the Seventh Circuit" and rejecting the argument that "[a dog]'s alert to the seized currency does not sufficiently allege a 'substantial connection' between the currency and narcotics"). Jake was trained to alert on illicit substances, and he alerted on the package twice, in two different surroundings. There was a large amount of currency in a variety of small denominations. The person who mailed the package lied about its contents, and the currency was packaged in a way (shrink-wrapped, inside a gift-wrapped box, with the outside packaging thoroughly taped) intended to disguise the contents and

any odor they might contain. Although the Court notes that no illicit substances were found in the package, nor did the Government tie the currency to a particular drug transaction, the Government has established forfeitability of the currency by the preponderance of the evidence.

**III.     Conclusion**

Accordingly, **IT IS ORDERED, ADJUDGED AND DECREED** that $59,980.00 in U.S. Currency is hereby forfeited to the United States of America, and that no other person shall have any right, title, or interest thereto.

So ORDERED this 3rd day of February, 2020.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record
        Claimant Herbert Wong, *pro se*